UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| ANTONIO GAITHER,<br><br>                              Plaintiff,<br><br>   v.<br><br>MSS SOLUTIONS, LLC and<br>CAROLINA PIPE FABRICATION,<br>LLC.<br>                             Defendant. | Case No. [3:25-cv-460]<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

The Plaintiff, Antonio Gaither ("Mr. Gaither" or "Plaintiff"), by and through undersigned counsel, hereby files this complaint against MSS Solutions, LLC and Carolina Pipe Fabrication, LLC (collectively "Defendants"), and alleges the following:

    1.    Mr. Gaither worked as a stick pipe welder in the Defendants' pipe shop division. He had no performance issues and received merit-based raises in his first few years with the company. He was the only black employee in his department.

    2.    One of the supervisors did not like Mr. Gaither. He used the word "nigger" and allowed Mr. Gaither's co-workers to play music throughout the day containing the word in his presence. Mr. Gaither's complaints to his supervisor and the Defendants' human resources department about the music did not

    3.    The supervisor refused to assign Mr. Gaither to bonus projects that would have allowed him to earn more money.

4. When Defendants installed a new welding machine, the company brought in an instructor to train Mr. Gaither's white co-workers on how to use the equipment. However, Defendants refused to provide training to Mr. Gaither.

5. Defendants required their welders to pass an exam on the use of the new welding machine. When Mr. Gaither failed the exam, the Defendants demoted him to helper and decreased his hourly pay rate accordingly.

6. This is an action for damages due to race-based discrimination and retaliation in violation of 42 U.S.C. § 1981 (counts one and two) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (counts three and four).

## PARTIES, JURISDICTION, AND VENUE

7. Plaintiff is a resident of Mecklenburg County, North Carolina.

8. Defendants, MSS Solutions, LLC ("MSS") and Carolina Pipe Fabrication, LLC ("Carolina Pipe"), (Collectively, "Defendants"), are North Carolina-registered entities that were doing business in North Carolina at all relevant times.

9. Plaintiff worked for Defendants at their principal office located at 11524 Wilmar Boulevard, Charlotte, NC 28273.

10. This is an action for damages arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e et seq., and 42 U.S.C. §1981, and for unlawful retaliation under the above statutes.

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. §1343 (a)(4) (civil rights action), and 42 U.S.C. §2000e-5(f)(3) (unlawful discrimination and retaliation in employment).

12. All material allegations relative to the named defendant contained in this Complaint occurred in the State of North Carolina, Mecklenburg County. Therefore, venue properly lies in the Charlotte Division of the United States Court for the Western District of North Carolina, pursuant to 28 U.S.C. § 1391(b)(2).

13. At all relevant times, Defendants were engaged in interstate commerce.

14. Defendants employed over 500 more employees for each working day during each of the calendar workweeks and are therefore subject to the provisions of the statutes outlined herein.

15. Based on information and belief, Defendants were joint employers of Mr. Gaither, with Defendant Carolina Pipe acting as a common paymaster for MSS's employees.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

16. On January 3, 2025, Plaintiff filed a Charge of Discrimination and Retaliation against MSS with the Equal Employment Opportunity Commission ("EEOC"). (Exhibit 1)

17. On March 28, 2025, Plaintiff received the "Notice of Right to Sue" from the EEOC. (Exhibit 2)

18. This action is timely filed under 42 U.S.C. §2000e-5(f).

19. Before filing this action, Plaintiff exhausted the administrative remedy on all claims pled hereunder.

## GENERAL ALLEGATIONS

20. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

21. MSS provides a range of services to its clients, including HVAC, mechanical construction, fire alarm and security systems, building automation controls, and more.

22. Plaintiff began his employment with Defendants as a stick pipe welder in their pipe shop division on or about February 4, 2020.

23. Plaintiff has no disciplinary history with the company.

24. Plaintiff received merit raises of $1 per hour in 2022 and $2 per hour in 2023.

25. Plaintiff's hiring documentation, pay-related documents, human resource correspondence, and employee ID badge all identify MSS as his employer.

26. Plaintiff's W-2 and pay stubs identify Carolina Pipe as his employer.

### Offensive Language

27. Beginning in October 2022, Mr. Gaither's white co-workers in MSS's Pipe Shop Division began daily playing music where the word "nigger" was repeatedly stated times.

28. Mr. Gaither, the only Black employee in his department, found the music offensive.

29. Mr. Gaither complained to his coworkers and supervisor, but the music continued to play.

30. The derogatory music ceased, albeit temporarily, when Mr. Gaither finally complained to MSS's human resources department.

31. In August and September of 2024, Mr. Gaither again complained to MSS's Human Resources department about the playing of offensive music in the pipe stick department.

32. Mr. Gaither also complained about one of his managers using the "n-word" and making remarks about the Black race.

### Disparate Opportunities

33. Defendants provide bonuses to their welders for their work on specific projects.

34. Welders are assigned to these "bonus projects" at the supervisor's discretion.

35. Mr. Gaither was assigned to these projects at a lower rate than his white co-workers.

36. When Mr. Gaither was assigned to a bonus project, he was usually assigned to projects that paid substantially less than his white co-workers earned on other projects.

37. After repeated complaints of discrimination, Mr. Gaither was removed from the bonus projects altogether.

### Refusal to Provide Training

38. In 2024, MSS transitioned to a new MIG welding machine.

39. The MIG welding machine requires the welder to use a process that involves feeding the wire electrode through a welding gun, creating an electric arc that melts the wire and base metal, and uses a shielding gas to protect the weld from atmospheric contamination.

40. MSS hired an instructor from another state to come to its facility and train its employees on how to use the new equipment.

41. However, the company did not provide the training to Mr. Gaither, the only black employee in the pipe shop division.

42. MSS requires its employees to pass a MIG weld test before they are allowed to operate the new equipment.

43. Mr. Gaither complained to MSS's human resources department about the organization's failure to train him on the MIG welding machine as they had done for his white co-workers.

44. Mr. Gaither took the company's MIG weld exam on or about October 2, 2024, but failed to pass due to his lack of training.

## DEMOTION

45. On October 10, 2024, Mr. Gaither was demoted to the role of "Helper" due to his failed exam, and his pay rate was decreased to $24 per hour.

46. The demotion effectively cut off Mr. Gaither from any opportunity to earn bonuses on welding projects.

47. Although Mr. Gaither was not allowed to continue welding due to the failed MIG weld test, Defendants allowed white co-workers who were not certified welders to weld projects.

## Count One
### (Violation of 42 U.S.C. § 1981)

48. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

49. 42 U.S.C. § 1981(a) guarantees individuals the same right to make and enforce contracts without regard to race.

50. Defendants are violating 42 U.S.C. § 1981(a) by discriminating against Plaintiff, a Black man, by refusing to provide him with the same training it offered to his white co-workers.

51. Defendants are violating 42 U.S.C. § 1981 by allowing white employees who are not certified to weld to work on welding projects and collect bonuses from these projects while preventing Plaintiff, who holds a certification, from working on the same projects.

52. The discriminatory conduct constitutes discrimination based on race.

53. Plaintiff suffered adverse employment action when Defendants demoted him, resulting in a reduction of his hourly pay rate.

54. Plaintiff also suffered adverse employment by the Defendants' refusal to assign him to projects that allow for bonuses.

55. By discriminating against Plaintiff based on his race, Defendant denied Plaintiff the same right to enjoy the benefits, privileges, terms, and conditions of

contracts as is and was enjoyed by non-black citizens, in violation of Plaintiff's rights under 42 U.S.C. § 1981.

56. Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights. Further, Defendants' management countenanced or approved of the racism as exhibited by Defendants' failure to address the conduct Plaintiff was subjected to adequately.

57. As a proximate and direct result of Defendants' conduct, Plaintiff has suffered and will continue to suffer damages, including emotional distress, inconveniences, loss of income, humiliation, and other indignities.

58. Accordingly, Plaintiff is entitled to compensatory and punitive damages, to the fullest extent permitted by 42 U.S.C. § 1981.

### Count Two
### (Retaliation in violation of 42 U.S.C. § 1981)

59. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

60. Plaintiff engaged in protected activity by complaining of race-based discrimination and disparate treatment based on race.

61. Defendant failed to address Plaintiff's claims of discrimination and issue appropriate remedies.

62. Defendant failed to take any steps to deter future wrongful or illegal conduct.

63. Defendant failed to impose any proper remedial measures in connection with Plaintiff's complaints of race-based discrimination or properly investigate such claims as a way to punish Plaintiff for his complaints.

64. In violation of 42 U.S.C. §1981, Defendant retaliated against Plaintiff after he complained of race-based discrimination.

65. These acts were done to punish Plaintiff and would have dissuaded a reasonable employee from engaging in protected activity.

66. Plaintiff may be unaware of additional detrimental acts constituting retaliation.

67. The actions taken by Defendants were done in response to Plaintiff's protected complaints of sexual harassment, were designed to dissuade a reasonable worker from complaining about discrimination or otherwise engaging in protected activity, and such conduct by Defendant constitutes illegal retaliation, prohibited by federal and state statutes.

68. Due to its illegal actions, Defendants must pay damages in an amount to be determined at trial for compensatory damages, including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

69. Plaintiff has had to obtain the services of an attorney to protect her rights and secure compensation for the damages incurred when Defendant violated Title VII and the FLSA. Therefore, he is entitled to recover reasonable attorneys' fees against the Defendants.

**Count Three**
**(Retaliation in violation of Title VII of the Civil Rights Act of 1964)**

70. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

71. Plaintiff, a black man, is a member of a protected category based on race.

72. Plaintiff's job performance was satisfactory.

73. Defendants discriminated against Plaintiff by subjecting him to derogatory language based on his race and disparate treatment in the terms and conditions of his employment in violation of Title VII.

74. Plaintiff was treated differently from similarly situated employees outside of his protected class.

75. Plaintiff suffered damages as a result of Defendants' unlawful actions, including emotional distress, past and future lost wages, interest, and the costs of bringing this action.

76. Defendants intentionally violated Plaintiff's rights under Title VII with malice or reckless indifference, and as a result, are liable for punitive damages.

## Count Four
### (Retaliation in violation of 42 U.S.C. §2000e-3(a))

77. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

78. Plaintiff engaged in protected activity by complaining of race-based discrimination.

79. Defendant failed to address Plaintiff's claims of race-based discrimination.

80. In violation of 42 U.S.C. §2000e-3(a), Defendant retaliated against Plaintiff after he complained of discrimination. By way of non-exhaustive examples, Defendant retaliated against Plaintiff by:

a. Demoting Plaintiff from welder to helper; and

b. Reducing Plaintiff's hourly rate from

81. These acts were done to punish Plaintiff and would have dissuaded a reasonable employee from engaging in protected activity.

82. Plaintiff may be unaware of additional detrimental acts constituting retaliation.

83. The actions taken by Defendants were done in response to Plaintiff's protected complaints of discrimination, were designed to dissuade a reasonable worker from complaining about discrimination or otherwise engaging in protected activity, and such conduct by Defendant constitutes illegal retaliation, prohibited by federal and state statutes.

84. Due to its illegal actions, Defendant must pay damages in an amount to be determined at trial for compensatory damages, including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

85. Defendant engaged in such actions with malice or reckless indifference to Plaintiff's federally protected rights, and Defendant must pay Plaintiff an additional amount in punitive damages for the sake of example and by way of punishment in an amount deemed sufficient by the jury.

86. Plaintiff has had to obtain the services of an attorney to protect his rights and secure compensation for the damages incurred when Defendant violated Title VII and 42 U.S.C. § 1981. Therefore, he is entitled to recover reasonable attorneys' fees against the Defendant.

## REQUEST FOR RELIEF

Plaintiff respectfully requests that the Court enter judgment in his favor as follows:

1. Back and front pay resulting from Defendants' violations of 42 U.S.C. § 1981 and Title VII to the fullest extent permitted by law;

2. Compensatory damages resulting from Defendants' violations of 42 U.S.C. § 1981 and Title VII to the fullest extent permitted by law;

3. Pre-judgment and post-judgment interest;

4. An award of costs and reasonable attorneys' fees; and

5. Such other relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims.

This the 26th day of June, 2025.

/s/ *Kirton M. Madison*
Kirton M. Madison
North Carolina State Bar No.43029
MADISON LAW, PLLC
8936 Northpointe Executive Park Drive
Suite 240-260

Huntersville, NC  28078
Tel: (704) 981-2790
Fax: (704) 930-0648
kmadison@madlawpllc.com
*Attorney for Plaintiff*